IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 13-cv-002152-MSK

CRAIG J. NICHOL,

      Applicant,

v.

FRANCIS FALK, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

## ORDER DENYING APPLICATION FOR WRIT OF HABEAS CORPUS

---

This matter is before the Court on the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody (ECF No. 1) ("the Application") filed by Applicant Craig J. Nichol.  Respondents have filed an Answer to Application for Writ of Habeas Corpus (ECF No. 25) ("the Answer") and Mr. Nichol has filed a traverse (ECF No. 27) ("the Traverse").  After reviewing the record, including the Application, the Answer, the Traverse, and the state court record, the Court FINDS and CONCLUDES that the Application should be denied and the case dismissed with prejudice.

## I.  BACKGROUND

Mr. Nichol is challenging the validity of his convictions and sentence in case number 05CR4051 in the District Court for the City and County of Denver, Colorado.  The factual background of Mr. Nichol's crimes and convictions was summarized by the Colorado Court of Appeals in state court postconviction proceedings as follows:

      Defendant was charged with crimes arising from two

> separate incidents in which he sexually assaulted his daughter, who was four or five years old at the time and who had previously been sexually assaulted by a different person.  At trial, the prosecution presented the following evidence of defendant's guilt: (1) the video-recorded statements of the victim during a forensic interview; (2) the testimony of the person who conducted the forensic interview; (3) the victim's testimony by closed-circuit television; and (4) defendant's stationhouse interview where he admitted to certain aspects of the two incidents with his daughter, including having touched his daughter on her bottom while she was naked and also having touched her on her vagina while he was masturbating.
>
> The jury convicted defendant of one count of sexual assault on a child, two counts of sexual assault on a child by one in a position of trust, two counts of aggravated incest, and one count of sexual assault on a child, pattern of abuse.

*People v. Nichol*, No. 11CA0947, slip op. at 1-2 (Colo. App. Aug. 2, 2012) (ECF No. 11-9 at 2-3).  The judgment of conviction was affirmed on direct appeal but the case was remanded to the trial court for resentencing.  *See People v. Nichol*, No. 06CA1682 (Colo. App. Sept. 10, 2009) (ECF No. 11-4).  On April 27, 2010, the trial court resentenced Mr. Nichol to an indeterminate term of forty-eight years to life in prison.  (*See* ECF No. 11-1 at 10.)

On August 2, 2010, Mr. Nichol filed in the trial court a postconviction motion to reconsider his sentence that was denied on August 24, 2010.  (*See id.* at 9.)

On January 27, 2011, Mr. Nichol filed in the trial court a postconviction motion pursuant to Rule 35(c) of the Colorado Rules of Criminal Procedure.  (*See id.*)  On April 25, 2011, the trial court denied the Rule 35(c) motion.  (*See id.*)  On August 2, 2012, the Colorado Court of Appeals affirmed the trial court's order denying the postconviction Rule 35(c) motion.  (*See* ECF No. 11-9.)  On July 15, 2013, the Colorado Supreme Court denied Mr. Nichol's petition for writ of certiorari in the postconviction Rule 35(c) proceedings.  (*See* ECF No. 11-11.)

Mr. Nichol filed the Application on August 12, 2013.  He claims in the Application that: (1) his confession was involuntary; (2) the victim's testimony via closed-circuit television violated his right to confrontation; (3) Colorado's Sex Offender Lifetime Supervision Act is unconstitutional; (4) the trial court violated his right to due process by denying his motion for a new trial that was based on discovery violations; (5) newly discovered evidence entitles him to a new trial; (6) the trial judge and prosecutor were biased against him; (7) trial counsel was ineffective; (8) the evidence was insufficient to support his convictions; and (9) the victim's out-of-court identification of him was impermissibly suggestive.  The Court previously entered an Order to Dismiss in Part (ECF No. 19) dismissing the fraud portion of claim four and claims eight and nine in their entirety as unexhausted and procedurally barred.

## II.  STANDARDS OF REVIEW

The Court must construe the Application and other papers filed by Mr. Nichol liberally because he is not represented by an attorney.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not be an advocate for a *pro se* litigant.  *See Hall*, 935 F.2d at 1110.

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Mr. Nichol bears the burden of proof under § 2254(d).  *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

A claim may be adjudicated on the merits in state court even in the absence of a statement of reasons by the state court for rejecting the claim.  *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011).  In particular, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning."  *Id.* at 784.  Thus, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  *Id.* at 784-85.  Even "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."  *Id.* at 784.  In other words, the Court "owe[s] deference to the state court's *result*, even if its reasoning is not expressly stated."  *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999).  Therefore, the Court "must uphold the state court's summary decision unless [the Court's] independent review of the record and pertinent federal law persuades [the Court] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented."  *Id.* at 1178.  "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims."  *Id.*

The Court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003).  The threshold question the Court must answer under § 2254(d)(1) is whether Mr. Nichol seeks to apply a rule

of law that was clearly established by the Supreme Court at the time his conviction became final.

*See Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Clearly established federal law "refers to the

holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the

relevant state-court decision." *Id*. at 412.  Furthermore,

> clearly established law consists of Supreme Court holdings in
> cases where the facts are at least closely-related or similar to the
> case *sub judice*.  Although the legal rule at issue need not have had
> its genesis in the closely-related or similar factual context, the
> Supreme Court must have expressly extended the legal rule to that
> context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).  If there is no clearly established federal

law, that is the end of the Court's inquiry pursuant to § 2254(d)(1).  *See id*. at 1018.

If a clearly established rule of federal law is implicated, the Court must determine

whether the state court's decision was contrary to or an unreasonable application of that clearly

established rule of federal law.  *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established
> federal law if: (a) "the state court applies a rule that contradicts the
> governing law set forth in Supreme Court cases"; or (b) "the state
> court confronts a set of facts that are materially indistinguishable
> from a decision of the Supreme Court and nevertheless arrives at a
> result different from [that] precedent." *Maynard* [*v. Boone*], 468
> F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and
> brackets omitted) (quoting *Williams*, 529 U.S. at 405).  "The word
> 'contrary' is commonly understood to mean 'diametrically
> different,' 'opposite in character or nature,' or 'mutually
> opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable application
> of clearly established federal law when it identifies the correct
> governing legal rule from Supreme Court cases, but unreasonably
> applies it to the facts.  *Id*. at 407-08.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See Williams*, 529 U.S. at 409-10.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather that application must also be unreasonable." *Id*. at 411.  "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671.  Furthermore,

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.  [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Richter*, 131 S. Ct. at 786 (internal quotation marks omitted).  In conducting this analysis, the Court "must determine what arguments or theories supported or . . . could have supported[] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*.  In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Richter*, 131 S. Ct. at 786 (stating that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 131 S. Ct. 786-87.

The Court reviews claims asserting factual errors pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2) allows the Court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court. Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct and Mr. Nichol bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

If a claim was not adjudicated on the merits in state court, and if the claim also is not procedurally barred, the Court must review the claim *de novo* and the deferential standards of § 2254(d) do not apply. *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

## III. MERITS OF APPLICANT'S REMAINING CLAIMS

### A. Claim 1

Mr. Nichol alleges in claim 1 that his confession was involuntary. He specifically alleges in support of claim 1 that a number of his most inculpatory statements during his police interview were involuntary because he was emotionally distraught and because the statements resulted from unduly coercive interrogation tactics that included promises of leniency.

7

Clearly established federal law provides that due process prohibits the use of a coerced, involuntary confession to secure a defendant's conviction. *See Dickerson v. United States*, 530 U.S. 428, 433-34 (2000). In determining whether a defendant's inculpatory statements were voluntary the Court must consider the totality of the circumstances, which includes the following factors: (1) the age, intelligence, and education of the defendant; (2) the length of the detention; (3) the length and nature of the questioning; (4) whether the defendant was advised of his constitutional rights; and (5) whether the defendant was subjected to physical punishment. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973); *see also Withrow v. Williams*, 507 U.S. 680, 693-94 (1993). In considering the totality of the circumstances, coercive police activity is a critical element because "[a]bsent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." *Colorado v. Connelly*, 479 U.S. 157, 164 (1986). "Although the ultimate question of whether [Mr. Nichol's] confessions were voluntary is a mixed question of law and fact subject to review under the standards set forth in § 2254(d)(1), any subsidiary factual findings . . . are entitled to a 'presumption of correctness' under § 2254(e)(1)." *Trice v. Ward*, 196 F.3d 1151, 1169 (10th Cir. 1999) (internal citation omitted).

On direct appeal, the Colorado Court of Appeals applied this clearly established federal law and concluded that the totality of the circumstances demonstrated Mr. Nichol's statements were voluntary.

> Here, at the outset, the police detective meticulously advised defendant of his *Miranda* rights; defendant indicated both orally and in writing that he understood those rights and was willing to speak to the detective. While advisement and understanding of *Miranda* rights do not preclude an involuntariness challenge, *see Humphrey*, 132 P.3d at 360, they are

certainly relevant to the voluntariness inquiry. *People v. Gennings*, 808 P.2d 839, 844 (Colo. 1991); *see also Dickerson v. United States*, 530 U.S. 428, 444 (2000) ("cases in which a defendant can make a colorable argument that a self-incriminating statement was compelled despite the fact that the law enforcement authorities adhered to the dictates of *Miranda* are rare") (internal quotations and punctuation omitted).

The one-on-one interview began shortly after 7:00 p.m. and lasted just over an hour. The detective and defendant, both dressed casually, sat across from each other at a small table. The tone was generally conversational. The first twenty minutes involved background matters before the detective turned directly to the abuse that had been recounted by defendant's daughter.

The sequential discussions of the two incidents followed the same general pattern: defendant initially denied any wrongdoing, then equivocated by vaguely admitting having done something wrong, and ultimately provided details of abuse stopping short of all his daughter had recounted. The alleged coercion occurred as the detective appealed to defendant as "a family man" to admit his "mistakes" so he could help his daughter better understand what happened and possibly someday even seek her forgiveness. The detective frequently appealed to defendant to distinguish himself from another man (mentioned by defendant) who had been charged with abusing defendant's daughter. The detective repeatedly distinguished between such a "monster" who posed a threat to other children and a "family man" who made drug-induced mistakes. The detective made no specific promises of leniency but implored defendant to consider whether he wanted to be portrayed to the DA, the judge, and his children as a monster or someone who had made terrible mistakes stemming from his drug problems.

We conclude defendant's interview statements were made voluntarily and without any coercive police conduct, either physical or psychological, that could have overborne defendant's free will. The detective's questioning, though sometimes pointed, was not the type of coercive conduct that could violate due process. And, while honestly stating he would be presenting the case to a prosecutor and a judge, the detective made no specific threats and offered no specific promises of leniency. Defendant did become distraught at times (stating he wished he was dead) but never to the point the interview had to be stopped; that distress,

> moreover, resulted not from any improper interrogation but from
> defendant's understanding of the familial and legal predicaments
> he was facing.  His will was never overborne, and his statements
> were voluntary.

(ECF No. 11-4 at 5-7.)

To the extent Mr. Nichol may be challenging the state court's factual findings regarding the police interview, such as the determination that the police made no specific promises of leniency, he fails to present clear and convincing evidence to overcome the presumption of correctness that attaches to those findings.  *See* 28 U.S.C. § 2254(e)(1).

Mr. Nichol also fails to demonstrate that the state court's decision is contrary to clearly established federal law.  That is, he fails to demonstrate the Colorado Court of Appeals applied a rule that contradicts the governing law set forth in Supreme Court cases or that the Colorado Court of Appeals confronted a set of facts materially indistinguishable from a decision of the Supreme Court and nevertheless arrived at a result different from the Supreme Court precedent. *See House*, 527 F.3d at 1018.

Finally, Mr. Nichol fails to demonstrate the decision of the Colorado Court of Appeals was an unreasonable application of clearly established federal law.  Although not argued by Mr. Nichol, two Supreme Court cases that discuss confessions obtained through threats or promises relating to a suspect's family are somewhat relevant to his voluntariness challenge.  *See Haynes v. Washington*, 373 U.S. 503, 514 (1963); *Lynumn v. Illinois*, 372 U.S. 528, 534 (1963).  In *Haynes*, the Supreme Court held that a written confession was involuntary and coerced when it was obtained through "the express threat of continued incommunicado detention" if the suspect did not confess and "the promise of communication with and access to family" if he did. *Haynes*, 373 U.S. at 514.  In *Lynumn*, the Supreme Court held that a confession was involuntary

and coerced when it was "abundantly clear that the petitioner's oral confession was made only after the police had told her that state financial aid for her infant children would be cut off, and her children taken from her, if she did not 'cooperate.'" *Lynumn*, 372 U.S. at 534.  However, "courts considering the effect of leveraging a suspect's familial affections on the voluntariness of that suspect's confession have not unanimously concluded that *Haynes* and *Lynumn* compel a rule that exploiting an accused's relationships to induce cooperation renders the resulting confession involuntary." *Brown v. Horell*, 644 F.3d 969, 982 (9th Cir. 2011) (collecting cases). Instead, such tactics are merely one factor among the totality of the circumstances.  *See id.*

Considering the totality of the circumstances, and giving the state court decision appropriate deference, the Court cannot conclude that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. 786-87.  Mr. Nichol fails to demonstrate the existence of any coercive police conduct or that his will was overborne.  The detective's appeal to Mr. Nichol as a "family man" and encouraging him to consider whether he wanted to be portrayed to his children as a "monster" or someone who simply made a mistake do not implicate the same concerns present in *Haynes* or *Lynumn*.  Furthermore, as the Colorado Court of Appeals noted, Mr. Nichol was advised of his rights and "[c]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of *Miranda* are rare." *Dickerson*, 530 U.S. at 444.

For all of these reasons, the Court finds that Mr. Nichol is not entitled to relief on claim 1.

**B.  Claim 2**

Mr. Nichol alleges in claim 2 that allowing the victim, who was seven years old at the time of trial, to testify via closed-circuit television violated his right to confrontation.  The right of an accused to confront the witnesses against him is guaranteed by the Sixth Amendment to the United States Constitution and applies in both federal and state prosecutions.  *See Stevens v. Ortiz*, 465 F.3d 1229, 1235 (10th Cir. 2006).  A Confrontation Clause claim presents a mixed question of law and fact.  *See Fratta v. Quarterman*, 536 F.3d 485, 499 (5th Cir. 2008).

"The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact."  *Maryland v. Craig*, 497 U.S. 836, 845 (1990).  However, the Supreme Court has "never insisted on an actual face-to-face encounter at trial in *every* instance in which testimony is admitted against a defendant."  *Id.* at 847.  Instead, "the Confrontation Clause reflects a *preference* for face-to-face confrontation at trial . . . that must occasionally give way to considerations of public policy and the necessities of the case."  *Id.* at 849 (citations and quotation marks omitted).  In fact, in a situation similar to the instant action, the Supreme Court in *Craig* determined the Confrontation Clause was not violated in a child abuse case by admission of the testimony of child witnesses who testified outside the defendant's physical presence via closed-circuit television.  *See id.* at 840, 857.

> [W]here necessary to protect a child witness from trauma that would be caused by testifying in the physical presence of the defendant, at least where such trauma would impair the child's ability to communicate, the Confrontation Clause does not prohibit use of a procedure that, despite the absence of face-to-face confrontation, ensures the reliability of the evidence by subjecting it to rigorous adversarial testing and thereby preserves the essence of effective confrontation.

*Id.* at 857.  The requisite finding of necessity depends on the particular facts of the case and requires the trial court to find that:  (1) a special procedure is necessary to protect the welfare of the particular child witness who seeks to testify; (2) the child witness would be traumatized by the presence of the defendant and not by the courtroom generally; and (3) the child witness will suffer more than de minimis emotional distress if forced to testify in the presence of the defendant.  *See id.* at 855-56.

The Colorado Court of Appeals applied this clearly established federal law and determined that Mr. Nichol's Confrontation Clause claim lacked merit for the following reasons:

> The trial court here made detailed, case-specific findings after a pretrial hearing in which the child's caseworker testified. The court found certain historical facts, including that the child: had had no contact with defendant since the prior year; was having nightmares and taking anti-anxiety prescription medication to sleep; had difficulty communicating at times in anything more than single-word phrases; and was "a very fragile little girl."  The court's ultimate finding was that "this child would suffer serious emotional distress or trauma if she was called on to testify in the presence of her father, . . . to the point that she would have difficulty communicating in front of a jury."

> Defendant initially challenges the caseworker's qualifications to offer an expert opinion regarding expected trauma to the child.  Much of the caseworker's testimony, based on perceptions drawn from his extensive personal contact with this particular child, was proper lay opinion testimony.  *See* CRE 701. In any event, the trial court had broad discretion to determine whether the witness was qualified to offer expert testimony, *see People v. Martinez*, 74 P.3d 316, 322 (Colo. 2003), and we perceive no abuse of that discretion.  The caseworker had vast experience, having worked for more than two decades with more than two hundred children in similar circumstances, and was fully qualified to offer an expert opinion on the expected trauma to the child in this case.  *Cf. People in Interest of L.G.*, 737 P.2d 431, 435-36 (Colo. App. 1987) (not abuse of discretion to allow social services caseworker to provide expert testimony regarding mother's parenting ability); *see also Thomas*, 803 P.2d at 149

(where a clinical psychologist and "a social worker" both testified as to "emotional damage" that alleged child abuse victim might suffer).

Defendant also argues that the record did not show the child's testimony in front of defendant would so traumatize her that she could not reasonably communicate. The caseworker's testimony, however, supported a finding that the child would be traumatized by having to face the man she said had assaulted her. The caseworker also stated that the child already had difficulty communicating – which was confirmed at trial by the child's crawling under a table when asked to describe the abuse. We therefore conclude the record supports the trial court's ultimate determination that the child would be so traumatized by having to testify in front of defendant that she could not reasonably communicate if she had to do so. That conclusion is legally sufficient to satisfy the Constitution and statute.

(ECF No. 11-4 at 9-11.)

The state court's factual findings, "including that the child:  had had no contact with defendant since the prior year; was having nightmares and taking anti-anxiety prescription medication to sleep; had difficulty communicating at times in anything more than single-word phrases; and was 'a very fragile little girl'" (ECF No. 11-4 at 9), are presumptively correct. *See* 28 U.S.C. § 2254(e)(1).  Mr. Nichol's conclusory argument that the prosecution did not offer sufficient evidence to support these factual findings is not clear and convincing evidence that overcomes the presumption of correctness.

Mr. Nichol also fails to demonstrate that the state court's ultimate conclusions based on these facts is either contrary to or an unreasonable application of clearly established federal law. He does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result. *See House*, 527 F.3d at 1018.  As discussed above, the Supreme Court in *Craig* reached the same

14

result on similar facts.  The Court also cannot conclude that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. 786-87.  Therefore, Mr. Nichol is not entitled to relief on claim 2.

## C.  Claim 3

Mr. Nichol contends in claim three that Colorado's Sex Offender Lifetime Supervision Act ("the Act") is unconstitutional.  Mr. Nichol specifically maintains that the Act violates procedural and substantive due process, equal protection, separation of powers, the prohibition against cruel and unusual punishment, and the privilege against self-incrimination.  However, Mr. Nichol fails to present any reasoned argument that demonstrates he is entitled to relief with respect to claim 3.  Instead, he offers only conclusory assertions that the Act is unconstitutional.

The Colorado Court of Appeals addressed Mr. Nichol's constitutional challenges to the Act as follows:

> Defendant raises multiple constitutional challenges to the Sex Offender Lifetime Supervision Act, which requires indeterminate life sentences.  § 18-1.3-1004(1), C.R.S. 2008.  We could decline to consider these contentions because defendant did not raise them in the trial court.  *See People v. Baker*, 178 P.3d 1225, 1235 (Colo. App. 2007).  In any event, as defendant concedes, such challenges consistently have been rejected by divisions of this court.  *See, e.g., People v. Firth*, 205 P.3d 445, 452 (Colo. App. 2008); *People v. Oglethorpe*, 87 P.3d 129, 134 (Colo. App. 2003); *People v. Strean*, 74 P.3d 387, 393-95 (Colo. App. 2003).  We reject defendant's constitutional challenges for the reasons set forth in those cases.

(*See* ECF No. 11-4 at 14.)

Absent any reasoned argument, Mr. Nichol's conclusory assertions that the Act is unconstitutional fail to demonstrate that the state court's rejection of his constitutional claims

challenging the Act is either contrary to or an unreasonable application of clearly established

federal law.  Mr. Nichol does not cite any contradictory governing law set forth in Supreme

Court cases or any materially indistinguishable Supreme Court decision that would compel a

different result.  *See House*, 527 F.3d at 1018.  Furthermore, the Court has considered the

arguments and analyses set forth in *Oglethorpe* and *Strean*, the state court cases on which the

Colorado Court of Appeals relied, and is convinced that the state court's ruling was not "so

lacking in justification that there was an error well understood and comprehended in existing law

beyond any possibility for fairminded disagreement."  *Richter*, 131 S. Ct. 786-87.  Therefore,

Mr. Nichol is not entitled to relief on claim 3.

**D.  Claim 4**

Mr. Nichol contends in claim four that the trial court violated his right to due process by

denying his motion for a new trial that was based on discovery violations.  Mr. Nichol alleges in

support of claim 4 "that unbeknownst to the defense, [the victim] had made allegations of sexual

abuse against another man named Ed Dubovik who she also refer[r]ed to as 'dad' or 'daddy'"

and that the victim "was encouraged by her mother to lie about the molestation."  (ECF No. 27-1

at 12-13.)  According to Mr. Nichol, this information would have been critical to the defense

because it was evidence of the victim's

> confusion about being sexually assaulted by Mr. Nichol (a
> predominant defense theme at trial), . . . it demonstrated [her]
> inability to accurately and adequately identify her abuser (another
> theme at trial), and had the defense been in possession of this
> information during trial, it would have argued that Mr. Dubovik
> was an alternate suspect and the true perp[e]trator in Mr. Nichol's
> case.

(ECF No. 27-1 at 13.)  Mr. Nichol contends that evidence the victim was encouraged by her

mother to lie would have allowed the defense to impeach the victim's testimony.

Suppression "of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). "Prejudice satisfying the third element exists 'when the suppressed evidence is material for *Brady* purposes.'" *Douglas v. Workman*, 560 F.3d 1156, 1173 (10th Cir. 2009) (quoting *Banks v. Dretke*, 540 U.S. 668, 691 (2004)). Generally, evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (quotation marks omitted). A reasonable probability of a different result exists "when the government's evidentiary suppression undermines confidence in the outcome of the trial." *Id.* at 434 (quotation marks omitted). A state court's resolution of a *Brady* claim is a mixed question of law and fact reviewed under § 2254(d)(1). *See Moore v. Gibson*, 195 F.3d 1152, 1165 (10th Cir. 1999).

On direct appeal, the Colorado Court of Appeals applied this clearly established federal law and rejected Mr. Nichol's *Brady* claim for the following reasons:

> Defendant knew before trial (and indeed in his interview with the detective) that the victim previously had accused another man of sexually assaulting her. What he did not know is that the victim had also reported being sexually assaulted by a third man, whom she called "Uncle Ed." The trial court held this nondisclosure was a discovery violation but that it was not "exculpatory" under *Brady* because it did not undermine confidence in the trial's outcome.

17

We hold this nondisclosure did not violate *Brady* and does not entitle defendant to a new trial.  Evidence is constitutionally "material" under *Brady* "when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different:" *i.e.*, "when it 'could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *Cone v. Bell*, 556 U.S. __, __ , 129 S. Ct. 1769, 1783 (2009) (quoting *Kyles v. Whitley*, 514 U.S. 419, 435 (1995)).

The evidence of defendant's guilt was, as the trial court noted, overwhelming.  His daughter unequivocally stated that he sexually abused her on two occasions, and defendant confessed to that abuse though not to all its particular details.  Defendant now argues the undisclosed evidence could have supported an "alternate suspect" defense because the victim sometimes referred to "Uncle Ed" as "dad" or "daddy."  The only indication she did so, however, was defendant's interview statement to the detective suggesting the victim may have been confused in her identification of defendant as the perpetrator.  In any event, the victim was unequivocal in her testimony and recorded statements that defendant was the one who had abused her in the two incidents in question.  The fact that the victim also accused a third man of having abused her on different occasions raises no reasonable probability of a different outcome and does not undermine confidence in the jury verdicts.

Defendant also relied on alleged newly-discovered evidence that his wife had encouraged the child to lie about the third man's abuse.  It is not clear the People had any prior knowledge of this alleged encouragement but in any event such allegations do not rise to the level of *Brady* materiality.

(ECF No. 11-4 at 12-13.)

The state court's factual findings regarding the evidence presented at trial are

presumptively correct.  *See* 28 U.S.C. § 2254(e)(1).  Those factual findings included that the

victim "unequivocally stated that [Mr. Nichol] sexually abused her on two occasions, and [Mr.

Nichol] confessed to that abuse though not to all its particular details."  (ECF No. 11-4 at 13.)

Mr. Nichol does not present any clear and convincing evidence to overcome the presumption of

correctness.

Mr. Nichol also fails to demonstrate that the state court's ultimate conclusion based on these facts is either contrary to or an unreasonable application of clearly established federal law. He does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result. *See House*, 527 F.3d at 1018.  He also fails to demonstrate that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement," *Richter*, 131 S. Ct. 786-87.  In particular, the Court agrees with the state court that the victim's accusation of sexual assault by a third person does not undermine the victim's unequivocal statements of sexual abuse by Mr. Nichol and his own confession to sexually abusing her.  Therefore, Mr. Nichol fails to demonstrate a reasonable probability that the result would have been different had the evidence been disclosed and he is not entitled to relief on claim 4.  Because the Court concludes there was no *Brady* violation, the Court need not address Mr. Nichol's argument that such a violation is a structural error requiring automatic reversal of his conviction.

## E.  Claim 5

Mr. Nichol contends in claim 5 that newly discovered evidence entitles him to a new trial.  The newly discovered evidence on which claim 5 is premised is the same evidence presented in support of the alleged *Brady* violation asserted in claim 4.  To reiterate, that evidence consists of the victim's allegations of sexual abuse against a man named Ed Dubovik and evidence that the victim was encouraged by her mother to lie about the sexual abuse.

"Claims of actual innocence based on newly discovered evidence have never been held to

state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact." *Id.*

The constitutional violation to which Mr. Nichol links his claim of newly discovered evidence is a *Brady* violation. (*See* ECF No. 27-1 at 20.) However, the Court already has determined that Mr. Nichol is not entitled to relief with respect to his *Brady* claim. Thus, to the extent claim 5 presents a federal constitutional claim, the claim fails.

To the extent Mr. Nichol is arguing that the state courts erred in denying his motion for a new trial, he fails to state a constitutional claim. The issue of whether a new trial should be granted is a matter of state law, *see Herrera*, 506 U.S. at 408 ("[t]he Constitution itself, of course, makes no mention of new trials"), and matters of state law may not be reviewed in a federal habeas corpus action, *see Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States"). Therefore, Mr. Nichol is not entitled to relief with respect to claim 5.

## F. Claim 6

Mr. Nichol contends in claim 6 that the trial judge and prosecutor were biased against him. Mr. Nichol alleges in support of his judicial bias claim that the trial judge made erroneous rulings and exhibited her bias by acting as a thirteenth juror, allowing the victim's caseworker to testify as an expert witness without being qualified as such, allowing the victim to testify via

closed-circuit television, allowing the prosecution to ask leading questions, and making

unspecified intemperate remarks about Mr. Nichol.

"[M]ost questions concerning a judge's qualifications to hear a case are not constitutional

ones, because the Due Process Clause of the Fourteenth Amendment establishes a constitutional

floor, not a uniform standard." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). "But the floor

established by the Due Process Clause clearly requires a 'fair trial in a fair tribunal.'" *Id.*

(quoting *Withrow v. Larkin*, 421 U.S. 35, 46 (1975)). Furthermore, the constitutional floor

requires "a judge with no actual bias against the defendant or interest in the outcome of his

particular case." *Id.* at 905. To show actual bias, Mr. Nichol must present "compelling"

evidence. *See Fero v. Kerby*, 39 F.3d 1462, 1478 (10th Cir. 1994) ("[d]isqualification of a judge

for actual bias or prejudice is a serious matter and should only be required when the evidence is

compelling.").

The Colorado Court of Appeals considered whether Mr. Nichol's allegations of judicial

bias required the trial court to recuse itself and reasoned as follows:

> Defendant next contends that the trial court should have
> recused itself because it was biased against him. In support of this
> argument, defendant asserts that the trial court's bias is
> demonstrated by its rulings allowing (1) the victim's caseworker to
> testify that the victim would be traumatized by testifying in front
> of defendant without first qualifying the witness as an expert
> witness; (2) the victim to testify by closed-circuit television; and
> (3) the jury to view the video-taped statement of the victim.
>
> A judge must be free of all taint of bias and partiality.
> *People v. Dist. Court*, 192 Colo. 503, 506, 560 P.2d 828, 831
> (1977). However, "[l]egal rulings in a case are [not], by
> themselves, []sufficient to demonstrate a bias or prejudice against a
> party." *People v. Thoro Prods. Co.*, 45 P.3d 737, 747 (Colo. App.
> 2001), *aff'd*, 70 P.3d 1188 (Colo 2003). Mere reference to adverse
> rulings absent some indication of hostility which would render the

trial unfair is insufficient to seek recusal of the court.  *See People v. Dist. Court*, 898 P.2d 1058, 1061 (Colo. 1995) (a judge's ruling on a legal issue does not require recusal absent a manifestation of hostility or ill will indicating the absence of the impartiality required for a fair trial); *Edmond v. Colorado Springs*, 226 P.3d 1248, 1252 (Colo. App. 2010) (a motion for recusal based on a subjective belief that a judge is not impartial is insufficient as a matter of law when it is unsupported by factual allegations that would reasonably indicate the judge is interested or prejudiced with respect to the case, parties, or counsel).

Therefore, defendant's assertions are not sufficient to demonstrate a hostility or bias against defendant.  *See Thoro Prods. Co.*, 45 P.3d at 747.  Moreover, defendant's assertions suffer from an additional infirmity in that the trial court's rulings were upheld in *Nichol I*.

Accordingly, the trial court did not abuse its considerable discretion in not recusing itself in this case.

(ECF No. 11-9 at 8-9.)

Although the Colorado Court of Appeals did not explicitly address Mr. Nichol's judicial bias claim as a federal constitutional claim, the Court owes deference to the state court's result and must uphold the decision "unless [the Court's] independent review of the record and pertinent federal law persuades [the Court] that [the state court's] result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented."  *Id.* at 1178.

Based on the Court's independent review of the record and the clearly established federal law set forth above, the Court concludes that Mr. Nichol fails to demonstrate a constitutional violation.  "Unfavorable judicial rulings do not in themselves call into question the impartiality of a judge."  *United States v. Mendoza*, 468 F.3d 1256, 1262 (10th Cir. 2006).  Generally, unfavorable or incorrect legal rulings constitute the basis for appeal, not for a bias challenge.

*See Liteky v. United States*, 510 U.S. 540, 555 (1994).  Furthermore, Mr. Nichol's vague and unsubstantiated allegations that the trial court acted as a thirteenth juror and made intemperate remarks about him also are not compelling evidence of actual bias.  Therefore, Mr. Nichol is not entitled to relief with respect to his claim of judicial bias.

Mr. Nichol's allegation of prosecutorial bias is premised on the prosecution offering into evidence a videotape of the victim's out-of-court interview, altering the videotape of the victim's interview, and asking leading questions of its witnesses to elicit what he contends was false testimony.  Although Mr. Nichol postures the claim as a claim of prosecutorial bias, the Court construes the claim as a claim of prosecutorial misconduct.

The clearly established federal law for purposes of a claim of prosecutorial misconduct is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168 (1986).  *See Parker v. Matthews*, 132 S. Ct. 2148, 2153 (2012).  In *Darden*, the Supreme Court explained that prosecutorial misconduct violates the Constitution only when the misconduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Darden*, 477 U.S. at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  In order to determine whether prosecutorial misconduct rendered the trial fundamentally unfair, the Court must consider "the totality of the circumstances, evaluating the prosecutor's conduct in the context of the whole trial."  *Jackson v. Shanks*, 143 F.3d 1313, 1322 (10th Cir. 1998).  "[T]he *Darden* standard is a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations.'"  *Parker*, 132 S. Ct. at 2155 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

The Colorado Court of Appeals analyzed Mr. Nichol's claim of prosecutorial bias as

follows:

> Defendant contends that the prosecutor was biased against him because she asked leading questions of her own witnesses, filed charges without any evidence connecting him to the crimes, and had a personal interest in the case.  Again, we reject this contention.
>
> At the outset, a prosecutor is entitled to be biased against a defendant.  However, he or she may be disqualified if there is a possibility of receiving some personal benefit from the outcome of the prosecution that is unrelated to his duty to enforce the law. *People in Interest of N.R.*, 139 P.3d 671, 676 (Colo. 2006). Special circumstances that would require disqualification are those circumstances in which it is "unlikely that the defendant would receive a fair trial." *Id.* at 677.
>
> Defendant's claim of prosecutorial bias is not supported by allegations of fact indicating that the prosecutor had a personal interest in the outcome of the case or that defendant could not receive a fair trial.  First, contrary to defendant's contention, there was evidence to support his convictions.  Second, to the extent defendant specifically mentioned instances where the prosecutor asked leading questions of a witness, leading questions are permitted in many instances such as questioning young children. Third, asking leading questions is not evidence of bias or professional misconduct.
>
> Accordingly, the district court did not err in denying this claim.  *See People in Interest of S.G.*, 91 P.3d 443, 447 (Colo. App. 2004) (if motion merely alleges opinions or conclusions that are unsubstantiated by facts supporting a reasonable inference of actual or apparent bias or prejudice, disqualification is not required).

(ECF No. 11-9 at 9-11.)

The Court notes initially that the prosecutorial misconduct claim Mr. Nichol asserts in the

Application is somewhat different than the claim raised in state court and addressed by the

Colorado Court of Appeals.  Although Respondents argue in their Answer that the prosecutorial

misconduct claim Mr. Nichol asserts in the Application is procedurally defaulted in part,

Respondents did not raise this procedural default argument in the Pre-Answer Response (ECF No. 11) previously filed in this action.  Therefore, the Court will not consider the procedural default argument at this time.  Instead, the Court reviews Mr. Nichol's prosecutorial misconduct claim *de novo* and finds that Mr. Nichol is not entitled to relief because he fails to allege facts that demonstrate the alleged prosecutorial misconduct rendered his trial fundamentally unfair.

Mr. Nichol's allegations in support of his prosecutorial misconduct claim reflect a fundamental misunderstanding of the role of the prosecutor in a criminal trial.  Unlike a judicial officer, the prosecutor in a criminal case is not required to be an unbiased participant.  As a result, it was not misconduct for the prosecution to offer into evidence a videotape of the victim's out-of-court interview.  With respect to the alleged alteration of the videotape, Mr. Nichol asserts only that the tape was redacted to eliminate a statement that Mr. Nichol was in jail.  (*See* ECF No. 27-1 at 31.)  Such a redaction is not evidence of prosecutorial misconduct. Finally, Mr. Nichol's vague allegations that the prosecution committed misconduct by asking leading questions of the victim and another witness to elicit what he contends was false testimony also do not demonstrate his trial was fundamentally unfair.  Therefore, Mr. Nichol is not entitled to relief with respect to the prosecutorial misconduct component of claim 6.

## G.  Claim 7

Mr. Nichol contends in claim seven that trial counsel was ineffective by:  (a) failing to challenge admission of the victim's videotaped statement; (b) failing to move to suppress Mr. Nichol's confession; (c) representing Mr. Nichol despite a conflict of interest; and (d) failing to move to recuse the trial judge.

It was clearly established when Mr. Nichol was convicted that a defendant has a Sixth

Amendment right to the effective assistance of counsel.  *See Strickland v. Washington*, 466 U.S. 668 (1984).  Ineffective assistance of counsel claims are mixed questions of law and fact.  *See id.* at 698.

To establish that counsel was ineffective, Mr. Nichol must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice to his defense.  *See id.* at 687.  "Judicial scrutiny of counsel's performance must be highly deferential."  *Id.* at 689.  There is "a strong presumption" that counsel's performance falls within the range of "reasonable professional assistance."  *Id.*  It is Mr. Nichol's burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances.  *See id.*  "For counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong."  *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999).  Furthermore, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

Under the prejudice prong, Mr. Nichol must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*; *see also Richter*, 131 S. Ct. at 792 (stating that "[t]he likelihood of a different result must be substantial, not just conceivable.").  In determining whether Mr. Nichol has established prejudice, the Court must look at the totality of the evidence and not just the evidence that is helpful to Mr. Nichol.  *See Boyd*, 179 F.3d at 914.

Finally, conclusory allegations that counsel was ineffective are not sufficient to warrant

habeas relief.  *See Humphreys v. Gibson*, 261 F.3d 1016, 1022 n.2 (10th Cir. 2001).  If Mr.

Nichol fails to satisfy either prong of the *Strickland* test, the ineffective assistance of counsel

claims must be dismissed.  *See Strickland*, 466 U.S. at 697.

The Colorado Court of Appeals applied the two-part *Strickland* test in rejecting Mr.

Nichol's ineffective assistance of counsel claims.  With respect to claims 7(a) and (b), in which

Mr. Nichol alleges that trial counsel was ineffective by failing to challenge admission of the

victim's videotaped statement and his own confession, the Colorado Court of Appeals reasoned

as follows:

> Defendant contends that his trial counsel was ineffective
> for failing to object to the admission of the videotape recordings of
> the victim's forensic interview and defendant's confession.  The
> district court found that defendant failed to allege how the
> admission of those recordings prejudiced him, and, therefore, the
> allegations were insufficient to establish prejudice from counsel's
> failure to object to their admission.
>
> Here, defendant's motion does not allege that the outcome
> of the trial would have been different if counsel had moved to
> suppress those recordings.  Rather, his motion focuses only on the
> reasons why counsel should have moved to suppress them.
> Accordingly, we agree with the trial court that defendant's
> allegations lack the specificity needed to establish prejudice.  *See
> People v. Osorio*, 170 P.3d 796, 801-02 (Colo. App. 2007) (when
> allegations are merely conclusory, fail to allege prejudice, or are
> refuted by the record, there is no error in summarily denying a
> defendant's motion without holding an evidentiary hearing);
> *People v. Wiedemer*, 692 P.2d 327, 328 (Colo. App. 1984)
> (defendant's postconviction motion was properly denied where the
> evidence failed to establish anything more than mere speculation
> that the defendant was prejudiced).
>
> Moreover, with regard to defendant's confession, we note
> that the division in *Nichol I* reviewed the admissibility of
> defendant's confession and rejected defendant's contention that it
> should have been suppressed.  Therefore, the trial court was
> required to deny this claim because it was raised in defendant's

27

direct appeal.  See Crim. P. 35(c)(3)(VI); *Rodriguez*, 914 P.2d at 249 (an argument raised under Crim. P. 35 that does not precisely duplicate an issue raised on appeal will be precluded if its review would be nothing more than a second appeal addressing the same issues on some recently contrived constitutional theory).

Further, based on that conclusion in *Nichol I*, defendant cannot establish that he was prejudiced from counsel's failure to seek suppression of the confession.  *See People v. Karpierz*, 165 P.3d 753, 759 (Colo. App. 2006) (a defendant fails to establish prejudice when he or she fails to show how the outcome would have been different); *People v. Fulton*, 754 P.2d 398, 400 (Colo. App. 1987) (when a claim of ineffective assistance of counsel may be disposed of on the ground of lack of prejudice, there is no need to assess counsel's performance).

(ECF No. 11-9 at 15-17.)

Mr. Nichol fails to demonstrate that the decision of the Colorado Court of Appeals rejecting claims 7(a) and 7(b) was contrary to or an unreasonable application of clearly established law.  He does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result.  *See House*, 527 F.3d at 1018.  He also fails to demonstrate that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Richter*, 131 S. Ct. 786-87.  It is not unreasonable to reject conclusory allegations regarding the prejudice prong because such allegations are not sufficient to warrant habeas relief.  *See Humphreys*, 261 F.3d at 1022 n.2.  It also is not unreasonable to conclude with respect to claim 7(b) that, because his confession was found to be voluntary and, thus, admissible on direct appeal, Mr. Nichol could not demonstrate prejudice as a result of counsel's alleged failure to move to suppress the confession.  *See McCalvin v. Yukins*, 444 F.3d 713, 718 (6th Cir. 2006) ("Because McCalvin's due process

28

voluntariness claim fails, her ineffective assistance-of-counsel claim also must fail because she could not have suffered prejudice from her counsel's failure to make a timely motion to suppress her confession."). Therefore, Mr. Nichol is not entitled to relief on claims 7(a) and 7(b).

Mr. Nichol alleges in claim 7(c) that trial counsel was ineffective by representing Mr. Nichol despite a conflict of interest. At the time Mr. Nichol was convicted, clearly established federal law established that an actual conflict of interest may violate the Sixth Amendment. *See Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). If an actual conflict is shown, prejudice is presumed. *Id.* at 349-50. However, "the possibility of conflict is insufficient to impugn a criminal conviction." *Id.* at 350. "In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 348. "[U]ntil a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." *Id.* at 350. "An actual conflict of interest exists only if counsel was forced to make choices advancing . . . interests to the detriment of his client." *Workman v. Mullin*, 342 F.3d 1100, 1107 (10th Cir. 2003) (quotation marks omitted). "Furthermore, the petitioner must be able to point to specific instances in the record that suggest his interests were damaged for the benefit of another party." *Id.*

The Colorado Court of Appeals applied this clearly established federal law and rejected Mr. Nichol's ineffective assistance of counsel claim premised on a conflict of interest.

> Defendant's allegation [regarding a conflict of interest], to the extent we can discern it, appears to focus on instances of ineffective assistance which we have already addressed and rejected. Because, each of those allegations was insufficient to establish ineffective assistance of counsel, we perceive no conflict of interest that could have adversely affected counsel's

29

representation.

Accordingly, defendant's claim fails.

(ECF No. 11-9 at 19.)

Mr. Nichol fails to demonstrate that the decision of the Colorado Court of Appeals with respect to claim 7(c) was contrary to clearly established law.  He does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result.  *See House*, 527 F.3d at 1018.

Mr. Nichol also fails to demonstrate that the state court's ruling was an unreasonable application of clearly established federal law.  He does not point to specific instances in the record that demonstrate counsel actively represented conflicting interests.  Instead, Mr. Nichol contends that "[t]he conflict of interest is revealed by a letter to Mr. Nichol from trial counsel stating:  but as I told you back then your confession to having molested your daughter was very difficult to overcome!"  (ECF No. 27-1 at 36.)  However, it is not readily apparent, and Mr. Nichol does not explain, how this statement evidences an actual conflict of interest with trial counsel.  As a result, the state court decision is not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. 786-87.  Therefore, Mr. Nichol is not entitled to relief on claim 7(c).

Finally, Mr. Nichol contends in claim 7(d) that counsel was ineffective by failing to move to recuse the trial judge.  He alleges in support of this claim that the trial judge acted as a thirteenth juror, apparently by allowing the case to be submitted to the jury even though the prosecution had failed to meet its burden of proof.  (*See* ECF No. 1 at 30-31.)  The Colorado

Court of Appeals rejected this ineffective assistance of counsel claim for the following reasons:

> Defendant contends that his trial counsel was ineffective for failing to seek recusal of the judge and prosecutor based on their biases against him.  Again, we reject his contention.
>
> As discussed above, defendant's motion failed to allege specific instances of bias that would establish he was denied a fair trial.  Therefore, because defendant has failed to allege facts that would establish his claim of bias, he cannot show that he was prejudiced by counsel's failure to seek the recusal of the judge and prosecutor.  *See Fulton*, 754 P.2d at 400.  Accordingly, the district court did not err in denying this claim.

(ECF No. 11-9 at 18.)

Mr. Nichol fails to demonstrate that the decision of the Colorado Court of Appeals with respect to claim 7(d) was contrary to or an unreasonable application of clearly established law. He does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result. *See House*, 527 F.3d at 1018.  He also fails to demonstrate that the state court's ruling was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. 786-87.  It is not unreasonable to reject conclusory allegations that counsel was ineffective because such allegations are not sufficient to warrant habeas relief. *See Humphreys*, 261 F.3d at 1022 n.2. Mr. Nichol's contention that the prosecution failed to meet its burden of proof is not sufficient to demonstrate judicial bias.  Therefore, Mr. Nichol is not entitled to relief on claim 7(d).

## V. CONCLUSION

In summary, the Court finds that Mr. Nichol is not entitled to relief on any of his remaining claims.  Accordingly, it is

**ORDERED** that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1) is denied and this case is dismissed with prejudice.  It is further

**ORDERED** that there is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c).  It is further

**ORDERED** that the "Motion for Addendum to the 28 U.S.C. § 2254 Petition" (ECF No. 28) is denied as moot.

DATED this 22nd day of January, 2015.

**BY THE COURT:**

Marcia S. Krieger
Chief United States District Judge